Nos. 26-1095, 26-1171

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee/Cross-Appellant*

v.

STATE OF MAINE,

*Defendant-Appellant/Cross-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

# PRINCIPAL AND RESPONSE BRIEF FOR THE UNITED STATES

HARMEET K. DHILLON
Assistant Attorney General

R. JONAS GEISSLER
Deputy Assistant Attorney General

ANDREW G. BRANIFF
KELSEY E. MCGEE
BENJAMIN E. SACHRISON
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(771) 220-8994

## TABLE OF CONTENTS

PAGE

STATEMENT OF JURISDICTION .......... 1

INTRODUCTION .......... 1

STATEMENT OF THE ISSUES .......... 3

STATEMENT OF THE CASE .......... 3

A. The United States' Lawsuit and the Resulting Settlement Agreement .......... 3

1. The Terms and Form of the Agreement .......... 4

B. The Parties' Proposed Modifications to the Agreement .......... 4

C. Proceedings Below .......... 6

SUMMARY OF ARGUMENT .......... 8

STANDARD OF REVIEW .......... 9

ARGUMENT

I. The district court erred in applying a strict interpretation of Rule 60(b)(5)'s requirements. .......... 9

II. The district court erred in denying the Parties' Joint Motion because it concluded that the Parties did not qualify for relief under Rule 60(b)(5). .......... 15

A. The Parties established changed circumstances to warrant modification of the Agreement. .......... 15

**TABLE OF CONTENTS (continued): PAGE**


1. The Parties, as sovereigns, agreeing to modify the Agreement constitutes a significant change. .... 15

2. In the alternative, the Parties agreeing that the modifications were in the public interest constitutes a significant change in circumstances. .... 18

B. The proposed modifications are suitably tailored to the changed circumstance. .... 21

CONCLUSION .... 25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Alexis Lichine & Cie. v. Sacha A. Lichine Est. Selections, Ltd.*, 45 F.3d 582 (1st Cir. 1995) .......... 21

*BLOM Bank SAL v. Honickman*, 605 U.S. 204 (2025) .......... 7, 11-13

*Brown v. Board of Educ.*, 349 U.S. 294 (1955) .......... 17, 22

*Flaherty v. Amigos Del Mar Ltd.*, 180 F.4th 396 (1st Cir. 2026) .......... 9

*Freeman v. Pitts*, 503 U.S. 467 (1992) .......... 14

*Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004) .......... 2, 18

*Giroux v. Federal Nat'l Mortg. Ass'n*, 810 F.3d 103 (1st Cir. 2016) .......... 9

*Heath v. De Courcy*, 888 F.2d 1105 (6th Cir. 1989) .......... 10

*Horne v. Flores*, 557 U.S. 433 (2009) .......... *passim*

*Mackin v. City of Boston*, 969 F.2d 1273 (1st Cir. 1992) .......... 10

*New York State Ass'n for Retarded Child., Inc. v. Carey*, 706 F.2d 956 (2d Cir. 1983) .......... 17-18

*Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1 (1st Cir. 2001) .......... 20

*Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992) .......... *passim*

*Small v. Hunt*, 98 F.3d 789 (4th Cir. 1996) .......... 19

*Smith v. Board of Educ. of Palestine-Wheatley Sch. Dist.*, 769 F.3d 566 (8th Cir. 2014) .......... 21, 23-24

**CASES (continued):** **PAGE**

*Thompson v. United States Dep't of Hous. & Urb. Dev.*,
404 F.3d 821 (4th Cir. 2005) .................................................. 14, 17

**STATUTES:**

Americans with Disabilities Act
42 U.S.C. 12131-12134 ........................................................... 3

28 U.S.C. 1291 ........................................................................ 1

28 U.S.C. 1331 ........................................................................ 1

28 U.S.C. 1345 ........................................................................ 1

**RULES:**

Fed. R. App. P. 4(a)(1)(B)(i) .................................................... 1

Fed. R. App. P. 4(a)(3) ............................................................ 1

Fed. R. App. P. 4(a)(5)(A)(i) .................................................... 1

Fed. R. Civ. P. 60(b) ............................................................ 9-10

Fed. R. Civ. P. 60(b)(5) ....................................................... 10, 15

Fed. R. Civ. P. 60(b)(6) ....................................................... 12-14

**MISCELLANEOUS:**

David Marcus, *The Legitimacy of Institutional Reform
Litigation*, 73 UCLA L. REV. 344 (2026) .................................... 10

U.S. Dep't of Just., Just Manual § 1-20.300 (2023) ......................... 19, 23

**MISCELLANEOUS (continued):** **PAGE**

U.S. Dep't of Just., Memorandum from the Attorney General, *Review of the Use of Monitors in Civil Settlement Agreements and Consent Decrees involving State and Local Governmental Entities* (Sept. 13, 2021), https://perma.cc/6WPP-4EHN ........................................................ 19

## STATEMENT OF JURISDICTION

This is an appeal from a final order in a civil case. The district court had jurisdiction under 28 U.S.C. 1331 and 1345. That court entered a final order denying the State of Maine's and the United States' Joint Motion to Modify Settlement Agreement on November 24, 2025. A.8.[1] Maine filed a timely Notice of Appeal on January 23, 2026, which is 60 days after the entry of the district court's Order. A.10; *see* Fed. R. App. P. 4(a)(1)(B)(i). The United States filed a Notice of Appeal on February 13, 2026 (A.12), which was timely because the district court permitted the United States to file a notice of appeal by February 20, 2026. A.9; *see* Fed. R. App. P. 4(a)(3) and (a)(5)(A)(i). This Court has jurisdiction under 28 U.S.C. 1291.

## INTRODUCTION

The November 2024 settlement agreement (Agreement) between the State of Maine and the United States (Parties) involves Maine's obligation to care for its children with behavioral health disabilities. The United States, through the Department of Justice's Disability Rights

---

[1] "A._" refers to the page numbers of the Appendix filed by the State of Maine on July 17, 2026.

Section, reached an Agreement with Maine that has already had a lasting impact on Maine's behavioral health services for children.

Considering that the Agreement concerns Maine's obligation to care for its children, the district court should have tread carefully when reviewing the Parties' joint motion to modify the Agreement because it risks "improperly depriv[ing] future officials of their designated legislative and executive powers." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004). The district court did not.

The district court erred in denying the Parties' Joint Motion because it applied an overly strict interpretation of Federal Rule of Civil Procedure 60(b)(5). Instead, applying the appropriate flexible interpretation of Rule 60(b)(5), the district court should have granted the Parties' Joint Motion because they, as sovereigns, agreed to modify the Agreement. At minimum, the Agreement should have been modified because the proposed modifications eliminated requirements which had proven to be unnecessary. This Court should reverse the district court's decision and remand with instructions to grant the Parties' joint motion.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in applying a strict interpretation of Rule 60(b)(5)'s requirements in evaluating the Parties' joint motion to modify the Agreement.

2. Whether the district court erred in denying the Parties' joint motion because it concluded that the Parties did not qualify for relief under Rule 60(b)(5).

## STATEMENT OF THE CASE

### A. The United States' Lawsuit and the Resulting Settlement Agreement

On September 9, 2024, the United States sued Maine, alleging that Maine violated Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. 12131-12134, "by failing to administer its services, programs, and activities for children with behavioral health disabilities in the most integrated setting appropriate to their needs." A.37.

Rather than resolve the matter through time consuming litigation, the Parties entered into the Agreement. A.39. On December 20, 2024, the district court granted the Parties' Joint Motion to Dismiss and retained jurisdiction to enforce the Parties' Agreement. A.39.

### 1. The Terms and Form of the Agreement

To avoid unnecessary repetition, the United States incorporates by reference Sections A and B of Maine's Principal Brief's Statement of the Case, which describes the substance and form of the Parties' Agreement, as though stated fully herein. *See* Maine Br. 6-13.[2]

## B. The Parties' Proposed Modifications to the Agreement

Following the district court's approval of the Agreement, the United States "actively and successfully monitored" Maine's compliance. A.84-85. Maine has complied with this process and assisted by providing "written reports." A.85.

The United States monitored Maine's compliance without an Independent Reviewer, despite the Agreement providing for the Parties selecting an Independent Reviewer. A.65. An Independent Reviewer had not been selected because the United States did not approve Maine's conditionally awarding the Independent Reviewer Contract to Inspired Consulting Group for reasons unrelated to the Parties' proposed modifications. Maine Br. 14.

---

[2] "Maine Br. _" refers to the page numbers of Maine's Principal Brief filed on July 17, 2026.

Under the Agreement, the Independent Reviewer is to "gather, analyze, and report on information and data reflecting [Maine's] progress in complying with all sections of this Agreement." A.65. The Independent Reviewer is to prepare annual reports on Maine's compliance, which are then submitted to the Parties. A.66. The Independent Reviewer is also to assist Maine with its compliance. A.51, 66. In case of disagreements between the Parties, the Parties may seek the Independent Reviewer's assistance "to resolve amicably any disagreements that arise." A.65-66; *see also* A.72. Maine is to "bear the cost of the Independent Reviewer, . . . which shall not exceed $900,000 for three years." A.68.

However, experience revealed that the Independent Reviewer "[was] not necessary to monitor and evaluate . . . Maine's compliance with . . . the Agreement." A.83. Therefore, the Parties agreed "to modify the . . . Agreement to remove the Independent Reviewer and make other minor changes." A.83. The Parties agreed that eliminating the Independent Reviewer was "in the public interest and [would] maintain the goals of the Agreement and the necessary mechanisms to accomplish those goals." A.85.

Under the modified agreement, "Maine [would] self-report its compliance with the Modified Agreement and progress directly to the United States." A.84. Maine would prepare and furnish the reports necessary for the United States to ensure Maine's compliance. A.84. At bottom, the modifications removed the middleman in the exchange of data submitted pursuant to Maine's data collection plan, and otherwise provided that the United States alone has authority to access the people, places, and documents necessary to assess compliance. *See* A.151-155, 158. The other proposed modifications are minor, including modifications to make children who are arrested more ascertainable to Maine, A.131, 135, and grant Maine's government officials more flexibility in conducting outreach events. A.140-141.

On September 2, 2025, pursuant to the Agreement's modification requirements, A.71, the Parties filed a joint motion requesting the district court "enter the Parties' proposed order to modify the . . . Agreement," which reflected the Parties' agreement. A.83.

### C. Proceedings Below

Before ruling on the Parties' joint motion, the district court permitted four nonparty organizations (collectively the Coalition) to file

an amicus brief with respect to the joint motion. A.6. Both the United States and Maine filed responses to the Coalition's amicus brief. A.7.

After the district court heard oral argument on the Joint Motion and reviewed post-hearing briefing, the district court denied the Parties' Joint Motion without prejudice. Add. 2, 24.[3] The district court concluded that Rule 60(b) governed the Parties' joint motion because the district court retained jurisdiction to enforce the Agreement when it granted the Parties' original Motion to Dismiss. Add. 16. In evaluating the Parties' joint motion, the district court applied a strict interpretation of Rule 60(b)(5)'s requirements. Add. 17 (citing *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 212 (2025)). Based on this strict interpretation, the district court denied the Parties' Joint Motion because the Parties failed to show a significant change in facts or law under *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), which warranted revision of the Agreement. Add. 22-24. The district court did not expressly consider whether the Parties' proposed modifications were suitably tailored to the Parties' changed circumstances. Add. 23-24. However, the district court

[3] "Add. _" refers to the page numbers of the Addendum filed with Maine's Principal Brief on July 17, 2026.

expressed doubt that the modifications were appropriate because they "may in actuality make it harder to ascertain whether compliance is being achieved." Add. 14. The United States now appeals the district court's order to this Court.

## SUMMARY OF ARGUMENT

The district court erred in two fundamental ways. First, the district court erred because it applied an unprecedented, strict interpretation of Rule 60(b)(5)'s requirements to the Agreement. Instead, the district court should have reviewed the Parties' joint motion under the flexible approach required by the Supreme Court's and this Court's precedent for institutional reform litigation.

Second, due to the district court's improper application of Rule 60(b)(5), the district court erred by concluding that the Parties failed to show a significant change in facts or law, which warranted revision of the Agreement. Because the Parties are sovereigns, their agreement, alone, to modify the Agreement constitutes a significant change. Regardless, the Parties' agreement that the modifications were in the public interest warranted modification of the Agreement. Therefore, the district court should have granted the Parties' joint motion because the modifications

eliminated unnecessary provisions and did not create or perpetuate a constitutional violation.

If the Court disagrees with our principal argument but accepts Maine's position that the district court incorrectly interpreted the modification provision of the Agreement to incorporate the Rule 60(b) standard, the United States requests the Court grant Maine's request to "vacate the District Court's decision and remand for consideration and application of [ordinary contract] principles to the Agreement's modification provision." Maine Br. 29.

## STANDARD OF REVIEW

This Court reviews a district court's decision to deny relief under Rule 60(b) for abuse of discretion. *Giroux v. Federal Nat'l Mortg. Ass'n*, 810 F.3d 103, 106 (1st Cir. 2016). The district court abuses its discretion when its conclusion is based on an error of law or plainly erroneous. *Flaherty v. Amigos Del Mar Ltd.*, 180 F.4th 396, 400 (1st Cir. 2026).

## ARGUMENT

### I. The district court erred in applying a strict interpretation of Rule 60(b)(5)'s requirements.

Under Rule 60(b), a "court may relieve a party . . . from a final judgment, order, or proceeding" for a variety of reasons. Fed. R. Civ. P.

60(b). One such reason is if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

In institutional reform litigation, courts are to apply a "flexible standard," which permits a party to modify a consent decree if the party can "establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 393 (1992); *see Mackin v. City of Boston*, 969 F.2d 1273, 1275 (1st Cir. 1992) (holding that "district courts should be flexible in considering requests for relaxation of, or release from, decrees which were initially established to bring about needed institutional reforms"). Such flexibility is essential because consent decrees stemming from institutional reform litigation "reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions."[4] *Rufo*, 502 U.S. at 381 (quoting *Heath v. De*

[4] Institutional reform litigation "target[s] systemic bureaucratic dysfunction," striking at "the totality of policies, practices, and customs that a bureaucracy uses to administer a policy regime." David Marcus, *The Legitimacy of Institutional Reform Litigation*, 73 UCLA L. REV. 344, 349 (2026).

*Courcy*, 888 F.2d 1105, 1109 (6th Cir. 1989)); *see Horne v. Flores*, 557 U.S. 433, 448 (2009) (noting that institutional reform litigation "raise[s] sensitive federalism concerns").

This matter constitutes textbook institutional reform litigation because it was initiated to reform the way "Maine administers its behavioral health service system for children." A.15. Therefore, it is quite extraordinary that the district court concluded that it was required to "interpret Rule 60(b) strictly." Add. 17. The district court reached this conclusion by misreading the Supreme Court's decision in *BLOM Bank SAL v. Honickman*, 605 U.S. 204 (2025). A cursory reading of *BLOM Bank* makes clear the district court's error.

In *BLOM Bank*, plaintiffs, a group of victims and families of victims of Hamas terrorist attacks, sued BLOM Bank SAL (BLOM) under the Anti-Terrorism Act. 605 U.S. at 206-207. "They alleged that BLOM aided and abetted Hamas's . . . terrorist attacks." *Id.* at 207. The district court dismissed plaintiffs' complaint with prejudice because they "had not 'plausibly allege[d] the general awareness . . . elemen[t] necessary to plead . . . aiding-and-abetting liability.'" *Ibid.* (first three alterations in original; citation omitted). The district court denied leave to amend

because the plaintiffs repeatedly affirmed that they would not seek leave to amend their complaint. *Id.* at 207-208.

On appeal, the Second Circuit concluded that the district court "misinterpreted the general-awareness element." *BLOM Bank*, 605 U.S. at 208. However, "even applying its less exacting standard," the Second Circuit affirmed the district court's judgment of dismissal. *Ibid.* Returning to the district court, plaintiffs filed a motion under Rule 60(b)(6) to vacate the district court's judgment so that they could amend their complaint based on the Second Circuit's clarification of the pleading standard. *Id.* at 208-209. The district court denied the plaintiffs' motion because the Second Circuit's clarification did not constitute an extraordinary circumstance to justify relief under Rule 60(b)(6). *Id.* at 209. The Supreme Court reversed the Second Circuit's reversal of the district court's decision. *Id.* at 217.

The Supreme Court concluded that the Second Circuit erred by making Rule 60(b)(6)'s "extraordinary circumstances" requirement "less demanding when a Rule 60(b)(6) movant also hopes to amend his complaint." *BLOM Bank*, 605 U.S. at 210. The Supreme Court noted "that relief under Rule 60(b)(6) is available only in narrow

circumstances" because "[w]ere it otherwise, the catchall provision could swallow" Rule 60(b)'s other grounds for relief. *Id.* at 211. The Supreme Court emphasized that "[t]his very strict interpretation" of Rule 60(b)(6) was required to preserve the finality of judgments. *Id.* at 212-213 (citation omitted).

The contrast between this case and *BLOM Bank* could not be clearer. In *BLOM Bank*, private plaintiffs sought relief under Rule 60(b)(6) to vacate the district court's affirmed final judgment so they could amend their complaint. Here, the Parties sought relief under Rule 60(b)(5) to modify their Agreement stemming from institutional reform litigation, which concerned Maine's obligation to care for children with behavioral issues. And, as repeatedly made clear by the Supreme Court, in such a context, flexibility is essential. *Horne*, 557 U.S. at 450.

As such, the district court got it backwards. The district court went to great lengths to dissect each of the Parties' justifications for modifying the Agreement because it believed that its hands were tied by the Supreme Court's admonishment that Rule 60(b) must be interpreted strictly. Add. 17. Yet, in reality, the district court was under no such constraint. Instead, the district court was free to exercise its traditional

equitable power. Of course, "[t]he hallmark" of that power "is its flexibility." *Thompson v. United States Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 830 (4th Cir. 2005). Pursuant to that power, the district court was permitted "to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action." *Freeman v. Pitts*, 503 U.S. 467, 487 (1992). Such flexibility is necessary so that remedies are "enforced with fairness and precision." *Ibid.*

In brief, the district court's error is that it incorrectly applied the standard for Rule 60(b)(6), which requires extraordinary circumstances for relief, and therefore necessitates a very strict interpretation of its requirements. Instead, the district court should have applied the flexible standard for Rule 60(b)(5), which more freely affords relief. Thus, the district court abused its discretion when it strictly interpreted Rule 60(b)(5)'s requirements with respect to the Parties' joint motion to modify the Agreement.

## II. The district court erred in denying the Parties' Joint Motion because it concluded that the Parties did not qualify for relief under Rule 60(b)(5).

Under the appropriate flexible approach to Rule 60(b)(5), the Parties more than met their burden to modify the Agreement based on changed circumstances.

### A. The Parties established changed circumstances to warrant modification of the Agreement.

A party may obtain relief under Rule 60(b)(5) from an order if it can show that "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). A consent decree is no longer equitable if changed factual conditions make compliance with the decree "substantially more onerous," "unworkable," or "detrimental to the public interest." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384-385 (1992). "[N]ew policy insights . . . warrant reexamination of the original judgment." *Horne v. Flores*, 557 U.S. 433, 448 (2009). The party seeking modification bears the burden to show a significant change in circumstances. *Rufo*, 502 U.S. at 384.

#### 1. The Parties, as sovereigns, agreeing to modify the Agreement constitutes a significant change.

The Agreement "raise[s] sensitive federalism concerns" because it concerns Maine's behavioral health system. *Horne*, 557 U.S. at 448.

Therefore, the United States and Maine agreeing to modify the Agreement constitutes a "significant change" in the "factual conditions" surrounding the decree, which warrants revision of the decree. *Rufo*, 502 U.S. at 384.

The public and, of relevance to this appeal, the people of Maine have a right to elected officials who can "respond to the priorities and concerns of their constituents." *Horne*, 557 U.S. at 449 (citation omitted). The Agreement necessarily implicates an area of concern for the people of Maine since it governs Maine's care of children with behavioral disabilities.

Recognizing this reality, the Agreement's terms provide that the Parties' agreement to modify is a significant change that warrants its modification. A.71. So long as the Parties agree to modification, nothing further is required of them—a significant change has occurred.

Therefore, since the Parties agreed to modify the Agreement, it would be detrimental to the public interest to continue to enforce the Agreement without evaluating whether the Parties' proposed modifications are suitably tailored to their agreement. To do so risks "bind[ing]" Maine's "officials to the policy preferences of their

predecessors," instead of what is required by federal law. *Horne*, 557 U.S. at 449.

Fortunately, Maine's officials are not so bound because a court's equity powers are "characterized by a practical flexibility in shaping . . . remedies and by a facility for adjusting and reconciling public and private needs." *Brown v. Board of Educ.*, 349 U.S. 294, 300 (1955) (footnote omitted). As such, a court's power to modify a consent decree is not precluded by "the absence of fault" by a party. *Thompson v. United States Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 830 (4th Cir. 2005).

Here, although neither party has failed to adhere to its obligations under the Agreement, the district court was not precluded from reevaluating the Agreement. In fact, such flexibility considering the Parties' agreement is the essence of the district court's equity power. *Thompson*, 404 F.3d at 830; *see New York State Ass'n for Retarded Child., Inc. v. Carey*, 706 F.2d 956, 970 (2d Cir. 1983) ("As experience with this type of litigation increases, a consensus is emerging among commentators in favor of modification with a rather free hand.").

Therefore, the district court abused its discretion when it concluded that the Parties did not establish a significant change in circumstances to justify modification. Add. 24.

**2. In the alternative, the Parties agreeing that the modifications were in the public interest constitutes a significant change in circumstances.**

The public "depends upon successor officials, both appointed and elected, to bring new insights and solutions to problems of allocating revenues and resources." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004). Here, experience revealed that the Independent Reviewer was unnecessary. A.83. Therefore, the Parties agreed to modify the Agreement because eliminating the Independent Reviewer was "in the public interest." A.85. Based on this new policy insight, the district court should have considered whether the proposed modifications were suitably tailored to the changed circumstances. *See Horne*, 557 U.S. at 448; *Ass'n for Child.*, 706 F.2d at 969 ("It is well recognized that in institutional reform litigation such as this judicially-imposed [sic] remedies must be open . . . to improvement when a better understanding of the problem emerges.").

Rather than adhere to this logical application of Supreme Court precedent, the district court denied the Parties' joint motion without considering the adequacy of their proposed modifications because it rejected this new policy insight as insignificant. Add. 22-24. Yet, left unaltered, the Agreement does significant harm to the public interest because the Agreement requires Maine's taxpayers to fund an Independent Reviewer their own officials view as unnecessary.[5] A.68; *see Small v. Hunt*, 98 F.3d 789, 796 (4th Cir. 1996) (holding in a Rule 60(b)(5) case that the public "has an interest in how its tax dollars are spent"); *see also Horne*, 557 U.S. at 448 ("When a federal court orders that money be appropriated for one program, the effect is often to take funds away from other important programs.").

The district court also refused to reexamine the Agreement because it concluded that "the United States provide[d] no substantive rationale

---

[5] "[M]onitorships must nonetheless be designed and administered with awareness that every dollar spent on a monitorship is a dollar that cannot be spent on other policy priorities." Memorandum from the Attorney General, *Review of the Use of Monitors in Civil Settlement Agreements and Consent Decrees involving State and Local Governmental Entities*, 4 (Sept. 13, 2021), https://perma.cc/6WPP-4EHN; *see* U.S. Dep't of Just., Just. Manual § 1-20.300 (2023) ("Monitorships should be designed to minimize the cost to jurisdictions.").

for why these changes must be made now, rather than at the time the original settlement was negotiated." Add. 22-23. Instead, the district court suggested that the Parties sought to modify the Agreement simply because of a change in administration. Add. 23.

The district court appears to have refused to recognize or overlooked the Parties' statement that "[t]he United States has actively and successfully monitored [Maine's] compliance since the Court approved the Agreement on December 20, 2024, using the mechanisms already in place without an Independent Reviewer." A.84-85. Therefore, contrary to the district court's suggestion, this case is not one in which a party seeks to modify an agreement simply because "it [was] no longer convenient to live with [its] terms." *Rufo*, 502 U.S. at 383; *contra Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 8 (1st Cir. 2001) (holding that defendants were not entitled to relief under Rule 60(b)(5) because their displeasure with the district court's order does not permit them "to escape the consequences"). Instead, the Parties sought modification because doing so would be "in the public interest and [would] maintain the goals of the Agreement and the necessary mechanisms to accomplish those goals" without needlessly expending additional state

resources. A.85; *contra Alexis Lichine & Cie. v. Sacha A. Lichine Est. Selections, Ltd.*, 45 F.3d 582, 586 (1st Cir. 1995) (holding that the public interest was not implicated by the private commercial dispute).

In institutional reform litigation, such as this case, rather than permit its rigid interpretation of Rule 60(b)(5) to inform its analysis, the district court should have recalled that the "public interest is paramount." *Smith v. Board of Educ. of Palestine-Wheatley Sch. Dist.*, 769 F.3d 566, 572 (8th Cir. 2014). Therefore, the district court abused its discretion when it concluded that the Parties did not show a change in circumstances warranting modification because the Parties' experience had proven that the public was harmed by the existing Agreement.

### B. The proposed modifications are suitably tailored to the changed circumstance.

Because the Parties met their burden to establish a significant change in circumstances, the district court should have "consider[ed] whether the proposed modification[s] [were] suitably tailored to the changed circumstance[s]." *Rufo*, 502 U.S. at 383. At this step, the district court should have deferred to Maine's government officials, "who have the 'primary responsibility for elucidating, assessing, and solving' the problems of institutional reform, to resolve the intricacies of

implementing a decree modification." *Id.* at 392 (quoting *Brown*, 349 U.S. at 299). The district court should have granted the Parties' proposed modifications so long as they were "tailored to resolve the problems created by the change in circumstances" and did "not create or perpetuate a constitutional violation." *Id.* at 391.

The district court failed to conduct this analysis because it erroneously concluded that "the Parties h[ad] not carried their burden to establish a change of circumstances sufficient to justify modification." Add. 24. However, the district court's reasoning demonstrates why the district court denied the Parties' joint motion. Add. 14.

Rather than properly defer to the expertise of Maine's officials, the district court reasoned that the proposed modifications "may in actuality make it harder to ascertain whether compliance is being achieved." Add. 14. The district court found that "there [was] no evidence" that the proposed modifications "[would] do anything to facilitate [Maine's] compliance with the Agreement." Add. 14. Yet, as explained above, the Parties learned through experience implementing the Agreement that the Independent Reviewer was unnecessary. A.83. As such, left unaltered, the Agreement requires Maine's taxpayers to fund needlessly

an unnecessary Independent Reviewer. *See Rufo*, 502 U.S. at 392-393 (holding that "[f]inancial constraints . . . are appropriately considered in tailoring a consent decree modification"). The Parties made other clarifying modifications based on "Maine's learned experiences during the first eight months of implementing the Agreement." A.84.

Further, the proposed modifications do not eliminate any provisions of the Agreement which are "a constitutional imperative." *Smith*, 769 F.3d at 572. The Independent Reviewer is not required by federal law. *See* U.S. Dep't of Just., Just. Manual § 1-20.300 (2023) ("*Some* settlement agreements and consent decrees with state and local governmental entities *may* involve the use of a monitor." (emphasis added)). Nor does federal law require that Maine provide a specific number of outreach events to inform the public of Maine's agreement with the United States. A.141. Federal law has no such requirement because such decisions should be left to the expertise of the government administrators tasked with ensuring children with behavioral disabilities receive quality care. A.41-43.

Based on the above, the district court should have granted relief under Rule 60(b)(5) and made the Parties' proposed modifications to the

Agreement. Yet, the district court did not do so because it was concerned that the Parties' proposed modifications were "intrinsic to the nature of the Agreement." Add. 18-19. Even granting the district court's perception of the modifications, the district court was permitted to make the modifications because its equity power "includes the authority to relieve the moving party of a consensual commitment that was essential to the original decree." *Smith*, 769 F.3d at 573. Intrinsicality is not a prophylaxis to modification. In fact, the district court had "the power to order a changed-circumstances modification that effectively terminates the decree." *Ibid.* However, the Parties' proposed modifications come nowhere close to terminating the Agreement.

Under the proposed modified agreement, the Parties are still more than committed and able to ensure Maine's children receive the care they deserve. In fact, the United States has continued to monitor Maine's compliance and Maine has made significant strides in improving its behavioral health systems. *See* A.84; Maine Br. 16-19. Therefore, the district court should have granted the Parties' joint motion to modify because the modifications removed unnecessary provisions, clarified the Parties' obligations, and did not create a constitutional violation.

## CONCLUSION

The district court abused its discretion by not applying a flexible approach to the Parties' request to modify the Agreement, which stemmed from institutional reform litigation. Due to this error, the district court erroneously concluded that the Parties did not qualify for relief under Rule 60(b)(5) based on changed circumstances. Therefore, this Court should reverse the district court's decision and remand with instructions to grant the Parties' joint motion to modify the settlement agreement.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

R. JONAS GEISSLER
Deputy Assistant Attorney General

s/ Benjamin E. Sachrison
ANDREW G. BRANIFF
KELSEY E. MCGEE
BENJAMIN E. SACHRISON
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(771) 220-8994

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 4,562 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Benjamin E. Sachrison
BENJAMIN E. SACHRISON
Attorney

Date: October 14, 2026

**CERTIFICATE OF SERVICE**

On October 14, 2026, I filed this brief with the Clerk of the Court by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

s/ Benjamin E. Sachrison
BENJAMIN E. SACHRISON
Attorney